Form To Be Used By Prisoners In Filing A Complaint
Under The Civil Rights Act, 42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2009 JAN 23 PM 3:24

BY 
DEPUTY CLERK

JAMES T. BURKE

(Enter above the full name of the Plaintiff or
Plaintiffs in this action)

vs.    Civil Action No. 2:09 -CV- 17

STATE OF VERMONT
CHARLES COLE - OFFICER

(Enter above the full name of the Defendant or
Defendants in this action)

## I.    PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?
Yes (X)    No (X)   WRit only

B. If your answer to A is Yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

1. Parties to this previous lawsuit:

Plaintiffs: JAMES T. BURKE

Defendants: STATE OF VERMONT D.O.C.

(Rev. 10/94)

1

2. Court (if federal court, name the district; if state court, name the county): U.S. DISTRICT COURT, BURLINGTON, VT. # 05401

3. Docket Number: 1:08-CV-157

4. Name of Judge to whom case was assigned: Niedermeier

5. Disposition (For Example: Was the case dismissed? Was it appealed? Is it still pending?): Pending.

6. Approximate date of filing lawsuit: 11-1-08

7. Approximate date of disposition: UNKNOWN

## II. CONFINEMENT

A. Present Place of Confinement: N.S.C.F. NEWPORT, VT.

B. Is there a prisoner grievance procedure in this institution?
Yes (X)  No ( )  N/A

C. Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes ( )  No (X)  N/A

D. If your answer is Yes:

1. What steps did you take? _____

2. What was the result? _____

E. If your answer is No, explain why not: FACTS DO NOT RELATE TO INCARCERATION.

## III. PARTIES

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any).

A. Name of Plaintiff: JAMES T. BURKE
Address: N.S.C.F.
2559 Glen Rd. Newport, VT. 05855

2

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, position, and places of employment of any additional defendants).

B. Defendant: __STATE OF VERMONT__ is employed as _____

at _____

C. Additional Defendants: __CHARLES COLE__ is employed as A __Police Officer At the Colchester, VT. Dept.__ at __P.O. Box 37, Colchester, VT. 05446.__

## IV. STATEMENT OF CLAIM

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary).

FACTS: Defendant Cole Filed A Corrupted, Twisted, Slanted And Fabricated "Investigation Report" #04BU15394 Against Plaintiff Burke on July 28th, 2004. On Page #6, of Cole's "Investigation Report" At Paragraph (3) Three Cole Signed and Dated His Report Attesting To: "Burke has also been Convicted in Federal Court For Transporting

## V. RELIEF    See Attached →

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Compel Def. Cole to produce A Written Stipulation That he Fabricated part of his "Investigation Reports" Against plaintiff Burke on July 28th 2004 AND order A Retraction Of AND A Supression of Issues Complained About in the plaintiffs Complaint That were in violation of Judge Keller's Orders.

3

Children across State lines for the purpose of engaging in a sexual act", on 7/28/04, this was a unlawful fabrication of case file evidence in the States favor and against Plaintiff Burke in violation of the 14th Amendment and a host of other State /federal case law, in a attempt to lend credence to complainant Emily Linso's false date rape drug allegations Defendant Cole thought he would beef up the evidence.

On page #6, paragraph #4, of the same **"Investigative report"** Officer Cole went on to fabricate further by stating "Burke has drug offenses" in a attempt to give credence to Emily Linso's bogus date rape drug allegations, which is how Cole slants, twist and fabricates evidence in the States favor and against Defendants and also this Plaintiff. ( **Order to See Defendant Cole's "Investigative report" not attached**)

On July 26th, 2004 Officer Charles Cole further twisted, slanted and fabricated his Affidavit for a search warrant of Plaintiff Burke's residence by stating on paragraph number (2) two that Emily Linso had been picked up by a male subject (Plaintiff Burke) when the evidence shows that 21 year old admitted and convicted heroin user Emily Linso allowed herself to become overly friendly with Plaintiff Burke on July 24th, 2004 and then left with Plaintiff Burke to obtain both alcohol and drugs to consume at Plaintiffs residence while home alone with him late into the night. **(See Investigator Stevens attached report)**.

On July 17th, 2008, Plaintiff Burke conducted a Pro-se deposition of Officer Defendant Cole at which time his twisted, slanted and fabricated Police interview of complain tent Emily Linso was admitted as deposition exhibit number one over Plaintiff Burke's objection, the interview that was conducted of Emily Linso by Defendant Cole was a clear result of his prejudicial leading questions and were clearly done to obtain prejudicial responses from Emily Linso by giving her the idea to respond with a negative and incriminating response, Defendant Cole also discussed issues of other unproven "Investigations" of Plaintiff Burke with fellow officer Duffy in front of Emily Linso in a attempt at feeding Emily Linso information about other things Plaintiff Burke had never been convicted on, the recorded and transcribed interview that Defendant Cole conducted of Emily Linso shows this. **(Order to see Defendant Cole's interview of Emily Linso not attached).**

At the deposition hearing defendant Cole also overly called the complain tent Emily Linso a "victim" or the "victim" while and when Defendant Cole was well aware of the fact that Judge Keller had Barred any witness from calling the complain tent Emily Linso a "victim" as prejudicial.

Officer Defendant Cole also at deposition unlawfully called Plaintiff Burke a rapist prior to Plaintiff Burke ever being convicted, in further violation of Judge Keller's order Barring this word as prejudicial.

Officer Defendant Cole also unlawfully stated into the deposition record that Plaintiff Burke had raped Emily Linso prior to Plaintiff Burke ever being convicted of this and in further violation of Judge Keller's Court order Barring such words that prejudice Plaintiff Burke. **(Order to see Defendant Cole's deposition not attached).**

# Nancy A. Stevens
**Private Investigator**
Vt. License No. 045-0002028

887 Downingsville Rd.  
Lincoln, VT 05443

(802)453-4294  
mail:nstevens@gmavt.net

## CONFIDENTIAL WORK PRODUCT

February 28, 2007

James T. Burke  
N.S.C.F.  
2559 Glen Rd.  
Newport, VT 05855

Re: State v, Burke

Dear James,

As we spoke on the phone, I am enclosing the certified felony convictions of the witnesses whose paperwork you requested. These are the total felony convictions from the Chittenden District Court.

As you know, I had conversation with Emily Linso at the jail in Windsor on Monday, February 26, 2007. In regards to your questions about her statements to Mr. Baer (and/or others), Emily Linso said that she was never really in Chittenden. She did acknowledge that she had dentist work done and that she might have had to spend a night but she remained vague on this topic. She indicated that she had already seen Mr. Baer's affidavit and that she passed it along to her caseworker. She said that if she got any mail which she felt might be about your case, she gives it to the caseworker. She said something like, "I told my father, I didn't say that because I wasn't there". (Apparently he saw that letter from Baer.) "I didn't do any time there".

I showed her the results of the wine analysis and she said that she was aware of that result, but said that her recall was that you had poured the wine and it went into a cup - maybe red & white and that maybe you had put something directly into her glass. I

explained that her vomit was also being tested at the FBI and that those results would be coming at the end of March.

She repeated that she has never blacked out like that. She felt sure that there was something in her drink. She said that she can recall little bits and pieces of the time at your place. She said, she recalls there were times during the evening when she was unable to move or to speak. She did say that she has experience with drugs and alcohol and this type of behavior and feeling she has never had before.

She said that primarily she used marijuana and alcohol and denied needle use of heroin. Indeed, initially she said that she used no other drugs besides those and then said that she had been in a situation in Tennessee when she got arrested in someone else's car and that they had heroin and a gun in the vehicle. She did say that if she ever used heroin, she snorted it.

She did say that she had very little sexual experience previous to this event. At one point she stated that she had only been with one other guy before you.

She said that she met you at the Daystation and you talked about her renting a room and she decided to check it out first, leaving her bag of clothes there in the Daystation bathroom. She talked about walking way out into the woods to find some pot plants which she described as "river weed". Emily said that you were the "guide" to these pot plants, not her. She said you took a bunch of the leaves, not buds, and put them in your backpack. She mentioned the "river weed" being in an area off Manhatten Drive and mentioned a gardening place, which I think must be Gardenway down in the Intervale area. She thought the pot could have been next to the Winoooski River but she says that she was very new to town and didn't know the area. After going there, she says that you two stopped at a store because she needed cigarettes. She said that she didn't need you to buy her wine because she always "gets her own" stuff / everything because she thinks she was already 21 by then.



She recalls going back to your place and then smoking some of these big pot leaves and getting her glass of wine and then she says, something happened and she must have been drugged because she can not recall what happened next and the parts of the evening she can vaguely remember, she recalls the feeling that she was unable to move or even speak at times. That's why she thinks she was drugged.

She did say that the following morning, she woke up naked and was stunned because she says she doesn't sleep that way, especially she keeps her socks on. She said that she put her clothes on and went into the living area – where you were. She said that you went grocery shopping for breakfast and she stayed there while you were shopping. She did recall that there was a landline there, maybe a small white phone, but that she didn't use it. She said that she really didn't know where she was. After you returned, she said she declined breakfast and started walking down North Avenue. She said you told her there were no buses on Sundays but apparently there was a free one which stopped at the stop by Burlington High School.

She went back to the Daystation and got new clothes and showered. She did say that she ran into a friend on Church Street who said she looked "bad". She told him of her recollections, of having her wine "drugged" and he said she should think about getting tested for AIDS and pregnancy and all that. He told her she could go to the hospital to be tested for rape – if that's what she thought happened.

Then she was able to call her friends Liberty and Morningstar Porta and apparently they drove into Burlington. They all met and talked about it and, eventually, Emily went to the hospital, by herself, to report that she was raped. She did indicate that she did not notice her pubic area was shaved until she got into the shower at the Daystation and she was shocked. She said that she never shaves anything, legs, armpits, etc. She is sure that she did not shave her pubic area.

She would meet with me again to hear the results of the testing of the vomit. She would also like to re-read the statements she made to the police way back then and I said that I could not give them to her as the State may have a process by which it shares that information with its witnesses. She did ask if she had a lawyer in all this and I explained that, indeed, it would be the State's Attorney or their victim's advocate.

I understand that you would like me to interview Liberty Porta and Seth Randall. As I said, I will try and locate Seth by the end of next week and I will call you on Friday, March 9, to let you know if I had any luck. Today's "Inmate Locator" shows that he is not incarcerated at this time. I do not return to work until Wednesday, March 7.

I understand you are writing some questions for me to ask of other witnesses.

Sincerely,

Nancy A. Stevens
Private Investigator

**VI.   SIGNATURE** (original signature must be on filed complaint)

Signed this 12th day of Jan., 2009.

_James T. Burke_
N.S.C.F.
2559 Glen Rd, Newport, VT, 05855.
(Signature of Plaintiff or Plaintiffs)

I/We declare under penalty of perjury that the foregoing is true and correct.

Executed on: Jan. 12th, 2009.

Signed: _James T. Burke_
N.S.C.F.
2559 Glen Rd,
Newport, VT. 05855.

4